[850 NE2d 630, 817 NYS2d 583]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PARIS DRAKE, Appellant.

Argued March 30, 2006; decided May 9, 2006

## POINTS OF COUNSEL

*Office of the Appellate Defender,* New York City (*Richard M. Greenberg* of counsel), for appellant. I. Paris Drake was denied a fair trial and the right to have the jury fairly evaluate the evidence when the court improperly instructed the jury that it could not consider the testimony of defense identification expert, Dr. Elizabeth Loftus, for the purpose of either crediting or discrediting the reliability of eyewitness testimony in general or in this case, essentially precluding the jury from considering her testimony at all. (*People v Radcliffe,* 196 Misc 2d 381; *Neil v Biggers,* 409 US 188; *People v Owens,* 69 NY2d 585; *People v Odell,* 230 NY 481; *People v Culhane,* 45 NY2d 757; *People v Ladd,* 89 NY2d 893; *People v Russell,* 266 NY 147; *People v Gardner,* 59 AD2d 913; *People v Lee,* 96 NY2d 157; *People v Jones,* 74 AD2d 854.) II. Paris Drake was denied his right to a fair trial and his Sixth Amendment right to confront and comprehensively cross-examine the witnesses against him when the court precluded him from recalling CF, a key prosecution witness, for the purpose of impeaching him with materially inconsistent statements he made to the press after his testimony. (*Delaware v Van Arsdall,* 475 US 673; *Davis v Alaska,* 415 US 308; *Chambers v Mississippi,* 410 US 284; *People v Hults,* 76 NY2d 190; *People v Gissendanner,* 48 NY2d 543; *People v Sepulveda,* 105 AD2d 854; *People v Farruggia,* 77 AD2d 447; *People v Hurd,* 71 AD2d 925; *Brookhart v Janis,* 384 US 1; *People v Wise,* 46 NY2d 321.) III. Paris Drake was denied his fundamental rights to confront and cross-examine the witnesses against him and to obtain potentially exculpatory information when the court first refused to conduct an in camera examination of the psychiatric records of LW, the prosecution's most important witness, and then precluded the defense from cross-examining her regarding a psychiatric therapy session she had left immediately prior to witnessing the crime. (*People v Gissendanner,* 48 NY2d

543; *People v Knowell*, 127 AD2d 794; *Pennsylvania v Ritchie*, 480 US 39; *People v Jackson*, 237 AD2d 179; *Green v New York City Hous. Auth.*, 186 AD2d 455; *Cox v New York City Hous. Auth.*, 105 AD2d 663; *People v Baranek*, 287 AD2d 74; *People v Smith*, 192 AD2d 806; *People v Melville*, 90 AD2d 488; *People v Tissois*, 72 NY2d 75.)

*Robert M. Morgenthau, District Attorney*, New York City (*Mark Dwyer* of counsel), for respondent. I. Defendant's identity as the man who assaulted Nicole Barrett was proved by overwhelming evidence. (*People v Arroyo*, 54 NY2d 567, 456 US 979; *People v Joyiens*, 39 NY2d 197; *People v Tejeda*, 73 NY2d 958; *People v Contes*, 60 NY2d 620; *People v Huertas*, 75 NY2d 487.) II. The trial court favored the defense when it admitted the testimony of an identification "expert," and the court's charge on the identification issue fairly put that issue to the jury. (*People v Lee*, 96 NY2d 157; *People v Kello*, 96 NY2d 740; *People v Brown*, 97 NY2d 500; *People v Miller*, 8 AD3d 176, 6 NY3d 295; *People v Voliton*, 83 NY2d 192; *People v Russell*, 71 NY2d 1016; *People v Fernandez*, 12 AD3d 251; *People v Fields*, 87 NY2d 821.) III. The trial court properly exercised its discretion when it denied defendant's request to recall a witness for, at best, marginal impeachment. (*People v Kello*, 96 NY2d 740; *People v Aska*, 91 NY2d 979; *People v Hooker*, 245 AD2d 528; *People v Duncan*, 46 NY2d 74, 442 US 910; *Delaware v Van Arsdall*, 475 US 673; *Davis v Alaska*, 415 US 308; *People v Sorge*, 301 NY 198; *People v Cordero*, 306 AD2d 9; *People v Gonzalez*, 254 AD2d 5; *People v Olsen*, 34 NY2d 349.) IV. The trial court properly rejected defendant's application to punish LW for cooperating with the criminal justice system by publicizing the irrelevant fact that she had visited a therapist. (*People v Borrello*, 52 NY2d 952; *People v Graves*, 85 NY2d 1024; *People v Kello*, 96 NY2d 740; *People v Gissendanner*, 48 NY2d 543; *People v Andino*, 291 AD2d 242; *People v Valentine*, 160 AD2d 325; *Delaware v Van Arsdall*, 475 US 673; *People v Harrell*, 209 AD2d 160, 86 NY2d 806; *People v Torres*, 289 AD2d 136; *People v Macon*, 256 AD2d 134.)

**OPINION OF THE COURT**

Chief Judge KAYE.

On the afternoon of November 16, 1999, Nicole Barrett was seriously injured when, suddenly and without warning, a man struck her in the head with a brick while she was waiting at a busy intersection in midtown Manhattan. Although Barrett did not see her assailant, there were several eyewitnesses to the at-

tack. Bystanders chased the fleeing suspect, but were unable to apprehend him. Nearly two weeks later, after an intensive investigation, defendant was arrested and charged in the assault.

The issue of identification was hotly contested at defendant's trial. Two eyewitnesses testified that defendant was the man they had seen either throw the brick or flee the scene, three testified that he was not that man, and several were unable to say.* Concluding that "this case is one in which expert testimony will benefit the jury by providing the framework for it to evaluate the accuracy and reliability of the eyewitness testimony" (*People v Drake*, 188 Misc 2d 210, 215 [Sup Ct, NY County 2001]), Supreme Court granted defendant's pretrial motion to admit the testimony of Dr. Elizabeth Loftus, an expert in the reliability of eyewitness identification testimony, as courts are encouraged to do in appropriate cases (*see People v Young*, 7 NY3d 40 [2006] [decided today]). The court ruled that the expert would be permitted to testify as to certain psychological factors that may influence the accuracy of an eyewitness identification, but held that

> "[t]o prevent any possibility that the expert testimony will infringe upon the jury's fact-finding function, the witness will not be permitted to give opinion testimony regarding the credibility or reliability of any witness. In addition, the expert may not opine as to whether any of the specific psychological factors outlined above actually influenced the identifications. In short, the testimony of the

---

* Contrary to the dissent, no eyewitness who identified defendant at trial had previously "selected Clement Tikiba in a photo array as the attacker" (dissenting op at 35). Rather, one witness noted that Tikiba "had some of the characteristics" of the perpetrator, describing him as a "seven out of ten." Another initially selected Tikiba's photograph as "someone I thought highly resembled the individual who threw the brick," although it "was not a very good photograph and . . . it would be very difficult to, you know, say one hundred percent as to anything as if it could be because of the quality of the photograph." This witness later viewed a lineup in which he identified a different man (neither Tikiba nor defendant) as "look[ing] like" the perpetrator. Then, in a second lineup he stated that he "like[d] number five"—another person altogether. At trial, the witness admitted that to positively identify the assailant "would be difficult for me to do." The jury, of course, heard all of this evidence and concluded that defendant was guilty, a verdict that was based on legally sufficient evidence, as defendant does not dispute. Whether another verdict might also have been reached is not germane to the issue before us.

expert is limited to setting forth the relevant psychological factors and interpreting the research data that demonstrate an effect on memory and perception" (188 Misc 2d at 215).

Since defendant raised no objection to these limitations, the propriety of the court's ruling in this regard is not before us (*cf. People v Cronin*, 60 NY2d 430, 433 [1983] [error to preclude opinion testimony of an expert witness on the basis that the opinion "went to the ultimate question and would usurp the jury's function"]; *People v Lee*, 96 NY2d 157, 162 [2001] ["(e)xpert opinion testimony is used in partial substitution for the jury's otherwise exclusive province which is to draw conclusions from the facts. It is a kind of authorized encroachment in that respect" (internal quotation marks and citations omitted)]).

At the conclusion of the case, the court, over defendant's objection, charged the jury that the testimony of Dr. Loftus "may not be used to discredit or accredit the reliability of eyewitness testimony in general, or in this case." Although we agree with defendant that this single sentence of the charge, when read in isolation, "was improper and should not have been used" (*People v Fields*, 87 NY2d 821, 823 [1995] [emphasis omitted]), we conclude, as did the Appellate Division, that the court's charge, taken as a whole, conveyed to the jury the correct standard as to the proper use of expert testimony. We therefore uphold defendant's conviction of first-degree assault and third-degree criminal possession of a weapon.

## The Sentence of the Charge in Isolation

The trial court apparently wished to communicate to the jury that it could not accept or reject the proffered eyewitness identifications based solely on expert testimony that the accuracy of such identifications may be influenced by a variety of psychological factors, but was instead required to render its own judgment. However, the words the court chose to express that thought were ill advised. Read in isolation, the sentence instructing that Dr. Loftus's testimony could not be used "to discredit or accredit the reliability of eyewitness testimony in general or in this case" was incorrect. Indeed, it might be taken to mean that the expert testimony the court had admitted could not in the end be considered for any purpose at all.

Inasmuch as the court had specifically precluded Dr. Loftus from "giv[ing] opinion testimony regarding the credibility or

reliability of any witness . . . or opin[ing] as to whether any of the specific psychological factors outlined above actually influenced the identifications" (188 Misc 2d at 215), there was no real danger here that the jurors would simply adopt the expert's opinion as to the reliability of these particular identifications. After all, the expert had never rendered one. Rather, she had, consistent with the court's ruling, merely "set[ ] forth the relevant psychological factors and interpret[ed] the research data that demonstrate an effect on memory and perception." (*Id.*)

Of course, jurors remain always free to accept or reject expert evidence in the first instance, and the jury here was properly so instructed:

> "The opinion of an expert witness is subject to the same tests concerning reliability and credibility as the testimony of any other witness. It is up to you as the triers of fact to determine whether to accept or reject an expert's opinion.

> "Given to assist you in reaching a proper conclusion, expert testimony is entitled to such weight as you find the expert's qualifications in his or her field warrant and it may be considered by you, but it's not controlling on your judgment."

Where there has been expert testimony on the reliability of eyewitness identifications, jurors must, if they choose to accept that testimony, be permitted to apply the identified psychological factors to the facts of the case before them in deciding whether they are convinced beyond a reasonable doubt as to the accuracy of the proffered identifications. Indeed, that is the only conceivable purpose of such testimony. Courts should therefore instruct jurors that if they accept the expert's testimony, they may consider it along with all the other evidence in the case in determining whether the People have proved the defendant's guilt beyond a reasonable doubt.

## The Sentence in Context

In charging a jury, the court must state "the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts" (CPL 300.10 [2]). However, a charge "may be sufficient, indeed substantially correct, even though it contains phrases which, isolated from their context, seem erroneous" (*People v Ladd*, 89 NY2d 893,

895 [1996]). "The test is always whether the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at decision" (*People v Russell*, 266 NY 147, 153 [1934]).

Here, the charge as a whole did not communicate to the jurors that they should disregard the testimony of Dr. Loftus. Rather, the court expressly instructed the jury that the testimony "was admitted for the purpose of providing the jury with various factors which scientific studies have shown are relevant to a person's ability to perceive and remember," while properly charging that "[y]ou, the jury, are the sole and exclusive judges of the reliability and credibility of the eyewitness testimony in this case." No reasonable juror could have concluded from the court's instructions that Dr. Loftus's testimony had been effectively stricken from the case.

Defendant raises only two other contentions—first, that the court erred in precluding him from recalling a prosecution witness to the stand for purposes of impeachment and second, that the court erred in denying his requests to inspect in camera the confidential psychiatric records of another witness and to cross-examine that witness about a therapy session she had attended on the day of the crime. Neither of these evidentiary determinations constituted an abuse of discretion.

Accordingly, the order of the Appellate Division should be affirmed.

G.B. SMITH, J. (dissenting). In this case where 2 out of 11 eyewitnesses identified defendant as the assailant and where three eyewitnesses unequivocally stated that defendant was not the attacker, the trial court's charge that the jury could not use the testimony of an eyewitness identification expert to reach its verdict was both an error of law and prejudicial.

On November 16, 1999, Nicole Barrett was standing on the northeast corner of East 42nd Street and Madison Avenue in Manhattan when a man threw a brick, hitting her in the head, and then ran away. Several accounts of the attack aired on television news, and the program coordinator of a Brooklyn homeless shelter called the police and reported he had a delusional and paranoid resident who matched the aired description of Barrett's attacker. The homeless man, Clement Tikiba, had a criminal record and resided at the shelter from August 20, 1999 until November 16, 1999, the day of the attack. On that day, he disappeared and has never been found. Tikiba's picture was

placed in a photo array and two witnesses, LW and RD, selected him as the assailant.*

Paris Drake was arrested two weeks following the attack based on an informant's tip. He was placed in six lineups, where five people failed to identify him. LW, however, who had previously selected Clement Tikiba in a photo array as the attacker, now identified defendant. AC, a maintenance worker, who did not see the crime but only the assailant running away, identified defendant in court as Barrett's attacker. Although he initially refused to help police by looking at a photo array or a lineup, AC came forward after he saw defendant on television being escorted by the police.

Eleven eyewitnesses testified at trial: six for the prosecution and five for the defense. Nine of eleven did not identify defendant as the perpetrator. Only LW and AC identified defendant in court. Defendant was subsequently convicted of first-degree assault and third-degree criminal possession of a weapon.

LW's testimony was significant for the prosecution because she was the only identifying witness who saw the attack. During trial the defense learned that LW had been returning from a visit to a psychotherapist when she witnessed the attack. The defendant asked for an in camera examination of LW's psychiatric records to determine whether they were relevant to her state of mind at the time of the crime and whether this could have altered her perception. The prosecution disclosed that she was on "mild" prescription medication for anxiety but the court refused the in camera inspection and ruled that the defense could not ask her any questions relating to her therapy.

The defense called Dr. Elizabeth Loftus, a professor of psychology at the University of Washington, who testified about the memory retention process. Dr. Loftus testified that the memory acquisition phase could be affected by the presence of a weapon and by cross-racial identification. She testified that memory fades over time and can become susceptible to post-event formation or distorted by new information from outside sources like news reports. She also addressed the memory retrieval stage and the weak correlation between the confidence of an eyewitness and accuracy.

At the jury charge conference, the judge informed the parties of her planned charge which included the statement:

"The testimony of Dr. Loftus was admitted for the

---

* RD claims he had eye contact with the perpetrator following the attack.

"purpose of providing the jury with various factors which scientific studies have shown are relevant to a person's ability to perceive and remember. This testimony may not be used to discredit or [accredit] the reliability of eyewitness testimony in general or in this case."

The defendant opposed the charging of the last sentence quoted and the majority concedes that the latter sentence was "improper," "ill advised" and should not have been used but concludes that the error was not prejudicial (majority op at 32).

Other than the erroneous sentence, the court gave the standard charge on expert testimony. It charged:

"You will recall that Dr. Maximo Koslow testified concerning his qualifications in the field of neurosurgery and that Dr. Elizabeth Loftus testified concerning her qualifications in the field of eyewitness identification.

"Where scientific, technical or other specialized knowledge will assist a jury in understanding evidence, our law permits a witness with special knowledge, skill, experience, training or education to state his or her opinion.

"You may consider the opinion of each expert along with the reasons given for his or her opinion and you may also consider the expert's qualifications and credibility.

"The opinion of each witness was based on particular facts or scientific studies. You may reject an expert's opinion if you find the facts established at this trial are different from those which form the basis of the expert's opinion.

"You may also reject the opinion if after careful consideration of all of the evidence in the case, expert and other, you disagree with that opinion.

"In other words, you're not required to accept an expert's opinion to the exclusion of the facts and circumstances disclosed in the other testimony.

"The opinion of an expert witness is subject to the same tests concerning reliability and credibility as the testimony of any other witness. It is up to you

as the triers of fact to determine whether to accept or reject an expert's opinion.

"Given to assist you in reaching a proper conclusion, expert testimony is entitled to such weight as you find the expert's qualifications in his or her field warrant and it may be considered by you, but it's not controlling on your judgement.

"The testimony of Dr. Koslow was admitted to assist the jury in determining the effect and the seriousness of the injuries sustained by the complainant and the manner in which they may have been caused.

"This testimony may not be used as actual evidence of how the injuries occurred or to supplant the testimony of any eyewitness.

"The testimony of Dr. Loftus was admitted for the purpose of providing the jury with various factors which scientific studies have shown are relevant to a person's ability to perceive and remember."

The court then gave the erroneous charge that Dr. Loftus' testimony "may not be used to discredit or accredit the reliability of eyewitness testimony in general or in this case." The effect of that portion of the charge was to negate all of the testimony of Dr. Loftus. The trial judge accurately explained that the testimony of the medical expert, Dr. Koslow, was admitted to help the jury understand the seriousness of Barrett's injuries but that it could not supplant eyewitness testimony on how the injuries occurred. The instruction left room for a jury to understand that since Dr. Koslow was not present during the attack, the eyewitness accounts could not be replaced by his testimony. The instruction regarding Dr. Loftus, however, was incorrect because her testimony was offered to influence the jury's consideration of the eyewitness accounts. Ordering jurors to discount and ignore (that is neither credit nor discredit) the testimony of Dr. Loftus was thus highly prejudicial.

In *People v Ladd* (89 NY2d 893 [1996]), this Court reiterated that a jury charge may be sufficient even if it contains erroneous phrases and "[t]he test is always whether the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at decision" (*id*. at 895, quoting *People v Russell*, 266 NY 147, 153 [1934]). We are

therefore concerned with whether the correct instructions predominated. In this matter, they did not. Although the trial judge stated, prior to the incorrect instruction, that an expert's testimony can be weighed for credibility like any other witness, the incorrect statement regarding accrediting and discrediting other witnesses erased and outweighed everything that came before. The jury was led to the conclusion that it could find Dr. Loftus' testimony valuable but could not apply her statements about the science of memory to the testimony of LW or AC. This charge effectively negated Dr. Loftus' testimony and predominated over the correct portions of the instructions.

The two eyewitness identifications form the center of the People's case against defendant and without LW and AC, there would have been no case. Defendant's only option to counter such significant testimony was to rebut the memory of these witnesses. The majority concludes that "[n]o reasonable juror could have concluded from the court's instructions that Dr. Loftus's testimony had been effectively stricken from the case" (majority op at 34) because the judge originally read them the correct standard jury instructions regarding the role of experts in a trial. We do not know the effect that these instructions had on the verdict but the majority takes the risk that the jury saw past this error. There is nothing in the record on which to base such an assumption (*see People v Williams*, 5 NY3d 732 [2005] [affirming reversal where incorrect instructions may have misled jurors to believe that they could not draw inferences concerning an absent ghost officer]; *People v Graves*, 76 NY2d 16 [1990] [holding instruction erroneous where it merged two separate elements and finding jury would not gather correct rule from instruction]).

The trial court also erred in its refusal to allow an in camera review of LW's psychotherapy records. Under the Sixth Amendment to the United States Constitution, a defendant has the right to confront witnesses against him. The Supreme Court has construed this right by holding the "primary interest secured by it is the right of cross-examination" (*Douglas v Alabama*, 380 US 415, 418 [1965]). The Supreme Court has also "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination" (*Davis v Alaska*, 415 US 308, 316-317 [1974], citing *Greene v McElroy*, 360 US 474, 496 [1959]). In *People v Gissendanner* (48 NY2d 543, 548 [1979]), this Court reiterated that

"access must be afforded to otherwise confidential data relevant and material to the determination of guilt or innocence, as, for example, when a request for access is directed toward revealing specific 'biases, prejudices or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand' " (quoting *Davis v Alaska, supra* at 316).

Given LW's importance to the People's case and the prosecution's concession that she was on medication, the court should have allowed an in camera inspection to determine whether her perception could have been hindered in any way by any medication or mental problems. In *Davis v Alaska*, the Supreme Court explained, "Whatever temporary embarrassment might result to [the witness] by disclosure of [sealed records]—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness" (415 US at 319). The trial court should have reviewed the medical records. Its refusal was error as a matter of law.

Accordingly, I dissent.

Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur with Chief Judge KAYE; Judge G.B. SMITH dissents and votes to reverse in a separate opinion.

Order affirmed.