10 N.Y.3d 417 (2008)
888 N.E.2d 1046
859 N.Y.S.2d 104
THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v.
ISAIAS UMALI, Appellant.
Court of Appeals of the State of New York.
Argued March 19, 2008.
Decided May 6, 2008.
*418 Carter Ledyard & Milburn LLP, New York City (Alan S. Lewis and Michael Shapiro of counsel), for appellant.
*419 Robert M. Morgenthau, District Attorney, New York City (Susan Axelrod and Mark Dwyer of counsel), for respondent.
Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

*421 OPINION OF THE COURT
GRAFFEO, J.
The primary issues in this case are whether defendant's right to counsel was violated when the trial court prohibited his attorney from speaking to him about his testimony during a trial recess and whether the court's instructions to the jury regarding defendant's justification defense improperly shifted the burden of proof to defendant. We conclude that there was no deprivation of the right to counsel because the ban on attorney-client communication was rescinded promptly after defendant's protest and the jury charge as a whole accurately stated that the People had to disprove the justification defense beyond a reasonable doubt.

I
Defendant Isaias Umali and his companions attended a party in April 2003 at a nightclub in lower Manhattan. A no-smoking law had recently been enacted and the nightclub's employees, including a bouncer named Dana Blake, spent the evening trying to enforce the new ban. Around 2:30 A.M., Blake observed defendant's friends, Jonathan and Alan Chan, with a group of people who were smoking. Blake approached the assembly and had an unfriendly conversation with Jonathan Chan that resulted in a scuffle.
Although witnesses to the altercation gave varying accounts of what transpired, most of them recounted that Blake grabbed Chan by the throat and pushed him toward an emergency exit. Chan was considerably smaller in stature and weight than Blake (who was six-feet, six-inches tall and weighed about 350 pounds) and was unable to escape Blake's grasp, despite the efforts of other patrons who attempted to free Chan. As Blake moved Chan toward the exit, defendant lunged at Blake and stabbed him in his groin with a six-inch long, serrated martial arts knife. Blake collapsed onto the floor, bleeding profusely. Defendant managed to escape the nightclub. When police officers arrived at the scene, a witness claimed that the Chans had stabbed Blake so they were arrested for assault. Blake was transported to a hospital and underwent surgery for a severed femoral artery, but he died later that day.
In the meantime, defendant sought help from his friends, the Atienza brothers. On his way to see them, defendant wrapped his knife in an article of clothing and threw it in a street drain. Upon his arrival, the Atienzas noticed large blood stains on *422 defendant's pants and suggested that he change his clothing. Defendant told them that the Chans had been in a fight with an African-American man and that he stabbed the man using a specialized maneuver he had learned in a martial arts class. One of the Atienzas remarked to defendant "[p]lease say that you used it in self-defense" and "that you did it for the right reason." Defendant responded that he did not act in self-defense and had no explanation for the stabbing.
The next morning, defendant's fiancée called him but defendant did not want to speak on the telephone about what had transpired at the nightclub. After his fiancée came to the Atienzas' apartment, defendant revealed that he had stabbed Blake using a special martial arts method. The Atienzas, another man and defendant's fiancée threw away defendant's bloody clothing, supplied him with new clothes and cleaned his telephone. While heading to defendant's house, his fiancee gave her knife to defendant so that he could show it to anyone who questioned him about the stabbing.[1]
After defendant learned from news reports that Blake had died, he attempted to take his own life by slashing his throat and wrists, but he survived and was placed under psychiatric supervision. The Chans were released by the police approximately two days after the stabbing incident. Defendant was eventually indicted for two counts of murder in the second degree. At trial, he raised a justification defense, explaining that he stabbed Blake in order to protect Jonathan Chan from the use of deadly physical force.
In his own defense, defendant began testifying on a Wednesday, but his testimony was not complete by the end of that day. Because Thursday was a holiday and the court would not be available for trial proceedings on Friday, the trial court adjourned the case until the following Monday. In light of this four-day adjournment before defendant retook the stand, the court advised defense counsel that they could not discuss defendant's testimony with him during the recess but they could speak about other matters. Defense counsel did not voice an objection and agreed not to discuss issues related to defendant's testimony. But on Friday morning, defendant's counsel asked the court to reconsider its ruling, arguing that the ban on communication *423 was impermissible under People v Blount (77 NY2d 888 [1991], cert denied 502 US 815 [1991]). Later that morning, a court employee contacted defense counsel and stated that the order had been rescinded, which left approximately 2½ days for defendant to confer with his attorneys before resuming his testimony.
The trial continued the following week and the jury ultimately rejected defendant's justification defense, convicting him of manslaughter in the first degree as a lesser included offense of second-degree murder. The Appellate Division affirmed and a Judge of this Court granted leave.

II
Defendant claims that his right to counsel was violated when the court prohibited him from discussing his testimony with counsel during the four-day recess and that this error was not cured when the court lifted the ban. It is well settled that a court cannot prohibit defense counsel from speaking to a defendant about his trial testimony during a recess unless the break is one of very short duration (see e.g. Geders v United States, 425 US 80, 88-89 [1976]; Perry v Leeke, 488 US 272, 283-285 [1989]; People v Joseph, 84 NY2d 995, 997-998 [1994]; People v Blount, 77 NY2d at 888, affg 159 AD2d 579 [2d Dept 1990]). However, it is equally clear that if counsel "is present and available to register a protest" to a restriction on communication that would provide the court with an opportunity to rectify its error, the failure to object renders a claimed deprivation of the constitutional right to counsel unpreserved for appellate review (People v Narayan, 54 NY2d 106, 112 [1981]). In this case, defense counsel allowed the limitation on communication to remain in effect for about 1½ days before challenging the ban. Consequently, in evaluating defendant's right to counsel argument, we do not consider the length or effect of the prohibition that occurred prior to defense counsel's protest that Friday morning.[2]
Once defense counsel made a proper objection, it was evident that the previous order precluding certain attorney-client communications *424 was improper because it was more than a "temporary and limited ban on discussions between defendant and [his] attorney during a brief recess" (People v Joseph, 84 NY2d at 997). Upon realizing that the order was improper, the trial court promptly rescinded it and verified that defense counsel were aware they could consult with defendant about his testimony. The time that elapsed between the objection and the withdrawal of the order was no more than three hours, and at the time the prohibition was lifted, there remained 2½ days for counsel to confer with defendant before trial proceedings would recommence. Furthermore, there was no indication that counsel believed additional consultation time was necessary.
In our view, these circumstances are comparable to the situation in United States v Triumph Capital Group, Inc. (487 F3d 124 [2d Cir 2007]). The restriction on communication in that case lasted about three hours, the ban applied to discussions regarding the defendant's testimony but he was free to speak with counsel about any other matter and the attorney was given further consultation time before the trial resumed (45 minutes compared to the 2½ days in this case). The United States Court of Appeals for the Second Circuit determined that the prohibition on communication did not require a new trial. We believe that the limited three-hour ban in this case, as in Triumph Capital, was insignificant based on the time remaining before continuation of the trial and, therefore, a reversal is not warranted in this case.[3]

III
Defendant also contends that the instructions provided to the jury on his justification defense were erroneous. He alleges that the trial court improperly shifted to the defense the People's burden of proving beyond a reasonable doubt that defendant did not subjectively believe deadly force was necessary. The People concede that the trial court misspoke at one juncture in *425 its charge, but assert that the charge as a whole adequately informed the jury that justification had to be disproved beyond a reasonable doubt by the People. Defendant, in contrast, maintains that the court's single misstatement requires a new trial because no supplemental instruction disavowed the incorrect charge.
As relevant to this appeal, justification is comprised of both subjective and objective elements. The subjective element is concerned with whether the defendant believed that the use of deadly force was necessary; while under the objective prong, the jury must consider whether a reasonable person in the defendant's circumstances would have believed that deadly force was required. When a defense of justification is raised, "the People must prove beyond a reasonable doubt that [the] defendant's conduct was not justified" (People v Craig, 78 NY2d 616, 619 n 1 [1991]). In other words, the People must demonstrate beyond a reasonable doubt that the defendant did not believe deadly force was necessary or that a reasonable person in the same situation would not have perceived that deadly force was necessary (see e.g. People v Goetz, 68 NY2d 96, 115 [1986]).
With these general principles in mind, the propriety of the instructions in this case can be considered. At the outset of the charge, the court told the jury:
"It is the prosecution's burden to prove each element of the crime charged beyond a reasonable doubt. The burden of proof never shifts to the defendant even though in this case he did testify. I repeat, even though he testified, he does not have to prove anything . . . The burden is always on the People to prove his guilt beyond a reasonable doubt" (emphasis added).
The court further mentioned that "the defendant has no burden of proof."
When the trial court segued from its instructions regarding the general principles of criminal law and the elements of the submitted offenses to the justification defense, it began by emphasizing that it was "the burden of the prosecution to convince you beyond a reasonable doubt [that] the defendant was not acting in self-defense." Shortly thereafter, the court reiterated that it was the People's burden "to disprove [the defense] beyond a reasonable doubt." After defining legal terminology and explaining the concept of initial aggression *426 which included a statement that the People had "the burden to establish beyond a reasonable doubt that the defendant was the initial aggressor"the court turned to the subjective and objective elements.[4]
The court next informed the jury that a variety of factors should be taken into account when evaluating the subjective element and asked the jurors to put themselves in defendant's situation at the time of the altercation. The jury was told that defendant could be justified even if his subjective belief in the need to use deadly force was mistaken, so long as that belief was reasonable and honestly held. The court then made the following statement, which is at issue in this appeal:
"If the evidence convinces you beyond a reasonable doubt that deadly physical force was necessary to prevent the imminent usethat the defendant believed that deadly physical force was necessary to prevent the imminent use of deadly physical force you still must find the second test, which is the objective test, were defendant's beliefs reasonable under an objective standard."
The court proceeded to address the mechanics of the objective test, explaining that "[t]he burden is on the prosecution to prove to your satisfaction beyond a reasonable doubt that a reasonable person in that situation could not have believed that deadly physical force was necessary to defend Jonathan Chan." The subjective and objective elements were then combined in the court's instruction and the jury was advised that if
"the prosecution did prove that the defendant could not have reasonably believed that Dana Blake was using, or about to use deadly physical force against Jonathan Chan, and it was not necessary to use deadly physical force to defend Jonathan Chan, then he cannot avail himself of this defense of justification."
Relatedly, the court instructed the jury to acquit defendant "if the People fail to prove that the defendant could not have had reasonably believed that deadly physical force was necessary."
Our task in evaluating a challenge to jury instructions is not limited to the appropriateness of a single remark; instead, we *427 review the context and content of the entire charge. A charge "`may be sufficient, indeed substantially correct, even though it contains phrases which, isolated from their context, seem erroneous'" (People v Drake, 7 NY3d 28, 33 [2006], quoting People v Ladd, 89 NY2d 893, 895 [1996]). Thus, a reviewing court must "read the instruction as a whole to determine if it was likely to confuse the jury as to the proper burden of proof" (People v Fields, 87 NY2d 821, 823 [1995]) or if it is reasonable to conclude that "`the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at [a] decision'" (People v Drake, 7 NY3d at 34, quoting People v Russell, 266 NY 147, 153 [1934]).
We agree with the Appellate Division that the portion of the trial court's instruction on the subjective element of justification was erroneous because the jury was told to consider whether the evidence proved beyond a reasonable doubt that defendant personally believed that the use of deadly force was necessary when it was the People's burden to prove that defendant did not believe deadly force was needed. Thus, the challenged remark should not have been included in the court's instructions.
But considered as an isolated component of the charge as a whole, that single misstatement could not have led the jury to conclude that the justification defense was established only if defendant proved that he thought deadly force was necessary. Viewing the charge in its entirety, the jury was repeatedly reminded that the burden was on the prosecution to prove its case beyond a reasonable doubt, which included disproving the justification defense. From the beginning of the charge, the jury was informed that the People's burden of proof "never" shifts and that the accused "does not have to prove anything." In addition, the instructions on general principles of criminal culpability, the elements of the submitted offenses and the initial aggressor concept all included discussions of the People's heavy burden of proving defendant's guilt beyond a reasonable doubt.
The justification instruction itself included five specific references to the requirement that the People had to disprove justification beyond a reasonable doubt: two at the beginning of the justification charge; one in relation to the objective element; and two more at the end of the charge when the court combined the subjective and objective elements together with the People's burden of proof. Moreover, although it is not determinative, the jury never expressed any confusion about the justification *428 charge or asked for supplemental instructions on the subject to guide its deliberations. In fact, when the jury did request additional assistance on the difference between the intent required for murder in the second degree and first-degree manslaughter, the court gave a supplemental charge and reiterated that "before a defendant, just to remind you, can be convicted of any crime, you realize that the People must disprove justification beyond a reasonable doubt." This was the final instruction the jury heard before rendering its verdict. In light of these repeated references to the correct legal standard, we conclude that the instructions as a whole could not have misled the jury regarding the applicable burden of proof. Thus, a supplemental charge explicitly disavowing the court's single misstatement of law was not required in this case, although it certainly would have been preferable had the court realized that it misspoke.

IV
Several other issues are raised by defendant, but it is necessary for us to address only one in detail. Testifying as a defense witness, Jonathan Chan told the jury that, when he was grabbed by Blake, he "couldn't breathe" and "felt like [he] was going to die." But under questioning by defense counsel, Chan admitted that when he was under arrest, he did not tell a detective about the extent of the force Blake used on him. Chan claimed at trial that he did not want to provide a motive to police so he downplayed his involvement in the homicide. On cross-examination, the prosecutor elicited an admission from Chan that he did not disclose to the detective the extent of the choke hold, that Blake had lifted him off the ground or that Chan was unable to breathe while he was in Blake's grasp. During redirect, Chan stated that he told his lawyer about the severity of the choking while they were at the police station.
Following the conclusion of Chan's testimony, the defense sought to call Chan's station house attorney to testify about Chan's comments to him regarding the degree of force used by Blake, which defense counsel argued was admissible as a prior consistent statement. The People objected on the basis that Chan had a motive to lie when he spoke to his lawyer and, therefore, the utterance did not qualify as a prior consistent statement. The trial court ruled that the attorney's testimony was inadmissible because Chan had an incentive to fabricate at the time he spoke to his former attorney.
Defendant's constitutional challenge to the preclusion of this testimony was not raised in the trial court and it is *429 therefore unpreserved for our review. The issue of whether the trial court abused its discretion, however, is properly before this Court. Because Chan's trial testimony was attacked by the People as a recent fabrication, the prior statement would have been admissible if it was made before Chan had a motive to lie (see e.g. People v Melendez, 55 NY2d 445, 451 [1982]; People v Baker, 23 NY2d 307, 323 [1968]). Although Chan had obvious incentives to minimize his own and his brother's involvement in the homicide, he arguably did not have a motive to fabricate in defendant's favor because defendant had not yet been implicated when Chan spoke to his lawyer (see People v McClean, 69 NY2d 426, 428 [1987] [statement inadmissible if "the same motive to falsify which exists at the time of the testimony existed at the time the prior consistent statement was made"]; People v Baker, 23 NY2d at 323). Ultimately, we need not decide whether the preclusion of the attorney's testimony was improper because, even if it was, the error was harmless: Chan told the jury he thought Blake was going to kill him; witnesses corroborated the defense's view that Blake had Chan in a choke hold and that it appeared Chan could not breathe; the jury was aware that Chan informed his attorney about the force Blake used; and there was substantial evidenceincluding defendant's admission in the immediate aftermath of the incident that suggested he did not attack Blake to defend Chansupporting the jury's conclusion that the stabbing of Blake was not justified. Thus, even if Chan's former attorney had been allowed to testify, there is no reasonable probability that the verdict would have been more favorable to defendant.
Defendant's remaining contentions are either unpreserved,[5] meritless[6] or harmless.[7]
Accordingly, the order of the Appellate Division should be affirmed.
Order affirmed.
NOTES
[1] Defendant's fiancée, the Atienza brothers and the other man subsequently entered into cooperation agreements with prosecutors that allowed them to withdraw their guilty pleas to hindering prosecution if they testified truthfully and, in return, they would receive reduced charges and sentences of probation.
[2] Defendant contends that the failure to preserve his constitutional claim when the ban was imposed should be forgiven because the court told counsel not to argue legal issues once the court had issued its rulings. On this record, there is nothing to suggest that defense counsel could not have earlier challenged the order imposing the ban. To the extent defendant relies on a theory of judicial estoppel because the People did not raise preservation in the courts below, we note that estoppel does not vest jurisdiction in this Court where it does not otherwise exist.
[3] We caution (as did the Second Circuit) that our decision should not be construed as permitting prohibitions on attorney-client communications in all situations where additional time is afforded for attorney-client discussions before testimony resumes since it is possible in certain cases that "restrictions on when a defendant can talk with his attorney may substantially interfere with his right to effective assistance of counsel" (United States v Triumph Capital Group, Inc., 487 F3d at 134 [emphasis omitted]). This is not such a case.
[4] It is unnecessary for us to address the merits of defendant's complaint about the initial aggressor charge because any error in that regard was harmless. In addition, defendant's claim relating to the lack of a charge on nondeadly physical force is meritless.
[5] Constitutional challenges to the alteration of the order of proof during the defense presentation are unpreserved.
[6] Preclusion of a defense expert witness and a nonconstitutional challenge to the alteration of the order of the defense case are meritless.
[7] The exclusion of bias evidence of a prosecution witness was harmless error.