OPINION OF THE COURT
Saxe, J.E
The trial court in this matter correctly instructed the jury as to its task of deciding whether defendant harbored the requisite intent to be convicted of attempted assault in the first degree. We find that when the charge is considered as a whole, the court’s supplemental instruction, responding to the request for clarification of whether intent can be formed on the spur of the moment, would not have led the jury to believe that the court was taking the question out of the jury’s hands and simply informing it that such intent had been established. We therefore reject defendant’s contention that the trial court committed prejudicial error by improperly directing a finding of intent, and we affirm the conviction.
The four-count indictment charged defendant with attempted murder in the second degree, attempted assault in the first degree, assault in the second degree, and criminal possession of a weapon in the second degree, arising out of an altercation between defendant and another young man in which the complainant was ultimately shot. At trial, during the course of its deliberations, the jury sent the court the following note with regard to the element of intent for the charge of attempted assault in the first degree:
“We need further clarification on Count #2, i.e., Does a spur of the moment action constitute intent? Flease define intent. Did the accused have to come to the fight with the intent to shoot for there to be attempted assault in the 1st degree?” (Emphasis added.)
Although defense counsel requested that the court simply define intent again and not answer either of the jury’s questions except *294 to say “it all depends on the circumstances,” the court rejected defense counsel’s challenge to its proposed response and determined both to provide an expanded charge on intent and to answer the jury’s first question by saying “yes . . . [depending on the circumstances,” and the second question “no.”
The court responded to the jury’s note asking “Does a spur of the moment action constitute intent?” with the following supplemental instruction to .the jury:
“First off I’m going to give you the longer version of what constitutes intent and that may very well answer these questions.
“[The c]rimes with which the defendant is being charged are crimes which require intent. Intent is defined by the penal law of this state as the situation that exists when a person has a conscious objective to cause the act with which he is charged.
“The burden is on the People to prove the intent of the defendant beyond a reasonable doubt. If you find from the evidence that the defendant did not have a conscious objective to bring about the violation of law you must find the defendant not guilty of this crime. Intent[,] then[,] is a mental operation that can be determined[,] usually[,] only by an examination of all the facts and circumstances surrounding the commission of a crime and the events leading up to, including and following it.
“Now, science has not yet reached the stage where a man’s mind can be x-rayed in order to disclose what thoughts are running through his mind. Intent is the secret and silent operation of the mind[,] and its formation can be instantaneous or drawn out ...
. “So, [intent’s] only visible physical manifestation is an accomplishment or intended accomplishment of the thing decided upon[,] and since intent is, as pointed out, a mental operation[,] it is not always easy to establish. It depends upon the peculiar circumstances of the case, upon the man’s spoken words, his actions and sometimes upon a combination of both.
“Now, going directly into your question does a spur *295 of the moment action constitute intent, in this context I would say yes[,] [depending on the peculiar circumstances of the situation. In this instance my answer is yes.
“Perhaps I can throw in an analog [sic], example removed from this particular pattern. Suppose two guys bump one another on the street, one guy says [‘] screw you[’] to the other guy and this guy pulls out a pistol and shoots him. That intent in that instance was formulated almost instantaneously, spur of the moment. Again[,] that’s an example. Here the answer is yes to that question. Could be drawn out, could be instantaneous.”
The trial court then turned to the second part of the question, which had merely phrased the same question a different way:
“ ‘Did the accused have to come to the fight with the intent to shoot for there to be attempted assault in the first degree?’ The answer to this is no. The defendant could have arrived at the scene to either confront or talk and then formulated the intent to shoot. So, the answer to question one is yes and the answer to question two is no.”
Defense counsel took exception, asserting that “answering the question and giving the example . . . was just too close to the factual pattern here.”
Initially, we observe that whatever questions are raised as to the phrasing of the court’s response to the jury’s questions, the court’s answer provided the requisite “meaningful response” (see People v Kisoon, 8 NY3d 129, 134 [2007]), which distinguishes this case from the recent Court of Appeals decision in People v Aleman (12 NY3d 806 [2009]), in which a conviction was reversed due to the trial judge’s failure to respond to the portion of a jury note stating that the jury was hopelessly deadlocked.
Turning to defendant’s claim of prejudicial error, we must keep in mind that in reviewing the adequacy of a trial court’s instructions, the challenged portions of the charge should not be examined in a vacuum, but must be assessed in the context of the jury instructions in their entirety. An instruction “may be sufficient, indeed substantially correct, even though it contains phrases which, isolated from their context, seem erroneous. The test is always whether the jury, hearing the whole charge, would gather from its language the correct rules which *296 should be applied in arriving at [a] decision” (People v Drake, 7 NY3d 28, 33-34 [2006] [internal quotation marks and citations omitted]; see also People v Fields, 87 NY2d 821, 823 [1995]; People v Coleman, 70 NY2d 817 [1987]).
In many cases, trial courts have misspoken as to an essential focus of the defense, and yet it has repeatedly been found that these charges, viewed in their entirety, conveyed the correct standards to the jury. For instance, in People v Drake, in which the central issue was whether eyewitness identifications of the defendant were accurate, the trial court erroneously charged the jury that it should not use the testimony of the eyewitness reliability expert “to discredit or accredit the reliability of eyewitness testimony in general, or in this case” (7 NY3d at 32). The error did not require reversal, however, since the remainder of the charge correctly instructed that the expert’s testimony was offered to provide the jury with factors that studies had shown to be relevant to assessing a person’s ability to perceive and remember (id. at 34).
In People v Fields, the trial judge, having provided instruction regarding the presumption of innocence, the burden of proof and the definition of reasonable doubt, then said, “If the evidence in the case reasonably permits a conclusion of either guilt or innocence, you should adopt a conclusion of innocence” (87 NY2d at 822). The Court of Appeals explained that this instruction was improper because a juror might interpret it to authorize a guilty verdict even if guilt was not established beyond a reasonable doubt, but concluded that the charge as a whole sufficiently conveyed the correct standard (id. at 823). It rejected the dissenter’s view that “[s]ince the offending instruction came at the end of the reasonable doubt charge, there is a very real danger that the jurors regarded it as the ‘last word’ and the most definitive explanation of the concept” (id. at 825).
And, in People v Umali (10 NY3d 417 [2008], cert denied 556 US —, 129 S Ct 1595 [2009]), after the trial court correctly instructed the jury that it was the People’s burden to disprove the justification defense beyond a reasonable doubt, it proceeded to explain the objective and subjective standards by which the defense could be disproved. Regarding the subjective test, the court incorrectly instructed:
“If the evidence convinces you beyond a reasonable doubt that deadly physical force was necessary to prevent the imminent use—that the defendant *297 believed that deadly physical force was necessary to prevent the imminent use of deadly physical force you still must find the second test, which is the objective test, were defendant’s beliefs reasonable under an objective standard” (10 NY3d at 426).
This portion of the charge, the Court of Appeals observed, was erroneous because it instructed the jury to consider whether it was proved beyond a reasonable doubt that the defendant believed deadly force was necessary, rather than whether it was proved beyond a reasonable doubt that the defendant did not believe deadly force was necessary. This inversion of the inquiry might lead the jury to consider whether the defendant had proved that he had believed deadly physical force to be necessary, instead of whether the People had proved that he did not believe it. However, the Court found that the remainder of the charge properly instructed the jury that it was always the People’s burden to disprove justification, and that the charge as a whole could not have misled the jury (id. at 427-428).
In the matter before us, the trial judge fully and properly instructed the jury from the outset in its preliminary instructions, as well as throughout the charge, that the jurors were the sole and exclusive judges of the facts of the case and that the element of intent was one of those facts. Furthermore, the court’s charge clearly explained that it was the jury’s evaluation of the evidence that controlled, “irrespective of what the attorneys on either side of the case may say regarding the facts and of course regardless of anything I may say to you during the course of this charge regarding the facts.”
We are also cognizant that a reading of the judge’s words in the trial transcript may be subtly different from what the jury hears. In a transcript, we are unable to discern such elements as the court’s emphasis, and, indeed, even small changes in punctuation may alter the exact sense of the words as they were conveyed to the jury. For instance, in the transcript, the first part of the challenged language is divided into separate sentences: “[I]n this context I would say yes. Depending on the peculiar circumstances of the situation.” Reading these words divided into separate sentences in this way could create the impression that the words “I would say yes” were intended as definitive rather than conditional. Had the transcriber used a comma instead of a period before the words “depending on the circumstances,” the transcript would have more accurately conveyed the point the court was trying to make to the jury, that, yes, intent may be found to have been formed at the spur *298 of the moment, depending on the circumstances. The court was not flatly saying “Yes” in answer to the jury’s inartfully phrased question, “Does a spur of the moment action constitute intent?” It was saying, “yes, depending on the circumstances,” thereby leaving it in the jury’s hands to consider the circumstances and decide whether the requisite intent had been formed.
Of course, as we examine that portion of the transcript, the court’s appropriately conditional response that a spur of the moment action may “constitute intent,” “depending on the circumstances,” seems to be immediately undercut by the coda, “In this instance my answer is yes.” These seven words present the nub of the difficulty, since, to the extent they are viewed in a vacuum, removed from the context of the instructions as a whole, these words seem to convey the sense that the court has made its own definitive determination that “[i]n this instance” the defendant’s spur of the moment action did, absolutely, “constitute intent.”
But trial judges, like everyone else, may on occasion employ inartful phrasings, “which, isolated from their context, seem erroneous” (People v Drake,- 7 NY3d at 33 [internal quotation marks and citation omitted]). It is for this reason that we are required to view the court’s instruction to the jury in its entirety.
By the time it employed those seven words, the trial court had given the jury an extended charge regarding the element of intent. It had instructed that intent “is a mental operation that can be determined usually only by an examination of all the facts and circumstances surrounding the commission of a crime and the events leading up to, including and following it,” that “its formation can be instantaneous or drawn out,” and that “since intent is, as pointed out, a mental operation [,] it is not always easy to establish. It depends upon the peculiar circumstances of the case.” By giving these additional instructions as to the considerations relevant to finding intent, before answering the jury’s direct question, the court was in effect emphasizing its previous instruction that the question of whether the requisite intent was established remained one for the jury, not the judge, to decide.
The court then moved on to the jury’s direct question, “Does a spur of the moment action constitute intent?” (which the court properly treated as if it read “Can a spur of the moment action constitute an intentional act?”), and answered with the previously discussed language that ended with the words “In *299 this instance my answer is yes.” Since the jury’s clear intent was to ask if a spur of the moment action could be intentional, the answer “Yes” meant not, “Yes, defendant harbored such an intent,” but “Yes, defendant could have formed the necessary intent at the spur of the moment.”
Nor did the trial court’s subsequent analogy—which defendant also challenges—which was provided to illustrate how intent may be formed “almost instantaneously, spur of the moment,” serve to misguide the jury. Indeed, the court’s conclusion of that illustration, with the words “[c]ould be drawn out, could be instantaneous,” further emphasized that the issues of when, how, and whether defendant formed the necessary intent were for the jury to determine.
It is readily apparent from taking all the court’s answers together, and in light of the entire charge, that the court was. merely providing further instruction to the jury in how to perform its job of determining whether defendant had formed the requisite intent.
What is more, the court’s answer to the second part of the jury’s question, “Did the accused have to come to the fight with the intent to shoot for there to be attempted assault in the first degree?” further supports the conclusion that the instruction as a whole conveyed that it always remained the jury’s task to determine the issue of intent. The court said, “The answer to this is no. The defendant could have arrived at the scene to either confront or talk and then formulated the intent to shoot.” This second answer further acknowledged that it was ultimately up to the jury to make findings as to if and when any intent was formed.
Indeed, even the phrasing of the jury’s question itself, and the fact that it was asked, makes it plain that the jury already understood that its assigned task included deciding whether defendant had formed the requisite intent and had simply been uncertain about whether he had to have harbored the intent before the act or could have formed the intent “instantaneously.” Moreover, by asking this question about intent, the jury in effect indicated that it had already considered and rejected defendant’s claim that the complainant’s own gun had simply discharged without defendant’s either taking hold of it or pulling the trigger; there is no reason to be concerned that the court’s charge prevented the jury from adequately considering defendant’s version of the events.
After carefully considering whether the jurors might have viewed the court’s instructions as simply informing them that *300 defendant had, in fact, acted with the requisite intent, we find “no reasonable possibility that the jury could have misunderstood the court’s response as a statement that intent had been established” (People v Watts, 43 AD3d 256, 259 [2007], lv denied 9 NY3d 965 [2007]). The jurors clearly understood the instruction that it was their task to decide whether defendant had committed the crime, including the physical shooting and the mental intent; their understanding is demonstrated by their checking with the court to make sure that intent could be formed at the spur of the moment. We have every reason to conclude that the jurors fully understood and fulfilled their assigned task, and no reason to conclude otherwise. It demeans the obvious abilities of this jury to conclude that it would have relinquished its responsibilities as the finder of facts based on a few words in the middle of a long supplemental charge.
There is no merit to defendant’s claim that the hypothetical posited by the court was improper, or prejudiced his case. A trial judge “is not precluded from supplying hypothetical examples in its jury instructions as an aid to understanding the applicable law” (see People v Wise, 204 AD2d 133, 134-135 [1994], lv denied 83 NY2d 973 [1994]). Hypotheticals similar to the case at hand are proper as long as they are not so “strikingly similar” as to convey the judge’s belief in the defendant’s guilt and possibly compel the jury to reach a verdict “in harmony” with the judge’s conclusion (see People v Hommel, 41 NY2d 427, 430 [1977]). The hypothetical used by the court, about a shooting precipitated by two men bumping into each other, bears little relationship to the fact pattern presented here, in which defendant approached the victim, confronted him about a prior incident, struck him and—as the jury found—shot him. The court’s analogy was not so similar to the facts of this case as to convey the court’s view of the evidence (compare People v Schenkman, 46 NY2d 232, 238-239 [1978], with People v Hommel, 41 NY2d at 430). In any event, any error in the court’s response was harmless (see People v Crimmins, 36 NY2d 230 [1975]).
Finally, when considering a court’s response to a jury’s specific questions, we should recognize the fine line the judge must walk. When a deliberating jury requests additional instructions on an issue, the trial court must “respond meaningfully” (People v Malloy, 55 NY2d 296, 302 [1982], cert denied 459 US 847 [1982]). So, while trial judges must be careful when providing supplemental instructions beyond the studied language of the CJI, it is necessary that their answers actually be responsive to *301 the particular question. A simple rereading of the standard CJI instructions, to which cautious judges may prefer to limit themselves, may be insufficient to provide the clarification needed by the jury on a particular issue when the initial standard charge language failed to explain the point clearly enough. We therefore look to trial judges to exercise judgment and discretion in framing meaningful responses to jury questions. But, in exchange for imposing that responsibility, we must, in turn, allow for a degree of imperfection in the framing of such off-the-cuff answers. When a prejudicial impact is claimed, we should carefully examine the entire charge for its impact as a whole before sending the matter back for a new trial. Upon so doing here, we find that the charge, as a whole, conveyed that it was the jury’s task to determine whether defendant harbored the requisite intent at the moment of the assault.
Defendant did not preserve his argument that the court gave counsel insufficient notice of its intended response to the jury’s note (see e.g. People v Cintron, 273 AD2d 84 [2000], lv denied 95 NY2d 889 [2000]), and likewise failed to preserve his evidentiary claims, and we decline to review these claims in the interest of justice. As an alternative holding, we reject these claims on the merits, except that we find that the People’s redirect examination of a detective concerning a conversation he had with the victim was improper but harmless.
Accordingly, the judgment of the Supreme Court, New York County (Edwin Torres, J.), rendered February 27, 2007, convicting defendant, after a jury trial, of attempted assault in the first degree, criminal possession of a weapon in the second degree and assault in the second degree, and sentencing him to an aggregate term of nine years, should be affirmed.