■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JENNIFER MARCHANT, Appellant. [60 NYS3d 616]—

Appeal from a judgment of the Niagara County Court (Sara S. Farkas, J.), rendered March 26, 2014. The judgment convicted defendant, upon a jury verdict, of manslaughter in the first degree.

It is hereby ordered that the judgment so appealed from is reversed on the facts, the indictment is dismissed, and the matter is remitted to Niagara County Court for proceedings pursuant to CPL 470.45.

Memorandum: Defendant appeals from a judgment convicting her upon a jury verdict of manslaughter in the first degree (Penal Law § 125.20 [1]) based on an incident in which she stabbed her boyfriend (decedent) with a kitchen knife, causing his death. Defendant's contention in her pro se supplemental

brief that the evidence is legally insufficient to support her conviction is not preserved for our review (*see People v Gray*, 86 NY2d 10, 19 [1995]), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]). We agree with defendant's further contention in both her main and pro se supplemental briefs, however, that the verdict is against the weight of the evidence insofar as the jury rejected her justification defense (*see People v Morgan*, 99 AD3d 622, 622-623 [2012]), and we therefore reverse the judgment and dismiss the indictment (*see* CPL 470.20 [5]).

The evidence at trial established that defendant left her home in the morning and spent several hours at a friend's house on the date of the incident, and the two of them then went to defendant's apartment late in the afternoon. Upon arriving there, they observed decedent drinking with his friends. After participating in drinking games at the apartment, decedent, defendant, and defendant's friend went to a bar where they continued drinking. Defendant and decedent returned to defendant's apartment at about 10:15 p.m. Shortly thereafter, they became engaged in a loud argument, and decedent called 911, purportedly to report that defendant, who was on probation, was drinking. Upon answering the call, the 911 operator could hear a male voice and a female voice, and decedent eventually spoke to the operator but then hung up the phone. The operator called back, and she and another 911 operator tried to speak to decedent and defendant, but decedent was reluctant to allow them to speak to defendant. Decedent hung up on the operators twice more, and he warned the second operator that "there would be trouble" if she sent the police. That operator, nonetheless, sent the police to the apartment. When responding officers arrived at the apartment, they heard screaming and observed a male and a female struggling with each other in a bathroom, and decedent "came out of the bathroom and lunged at" one of the officers. Upon subduing decedent, the officers observed that he was bleeding heavily and there was a knife on the bathroom floor. Decedent died from a single stab wound to the chest, and he had a blood alcohol content of .285% at the time of his death.

Defendant told one of the responding officers that decedent was "coming after [her]," that she "thought he was going to kill [her]," and that she "did not know what else to do." Upon being interviewed at the police station, defendant stated that decedent had chased her around the apartment during their argument, resulting in items being knocked over, that he had

forced open the bedroom and bathroom doors, and that she had retrieved the knife from the kitchen and told him to get away from her, but he would not listen. Defendant further stated that she had closed herself in the bathroom again, but decedent forced open the door, shut it behind him, dared her to stab him, and pulled her head backward by her hair. She stated that she had made one last effort to get out of the bathroom, but decedent grabbed her by the hair again and she "just stuck him" with the knife. Defendant's account was corroborated by police testimony that the bedroom and bathroom doors were damaged in the incident and pieces of their locks were found on the floor, by medical testimony that decedent had bruising on his shoulder consistent with breaking down doors, and by blood evidence tending to confirm that decedent was inside the bathroom in front of its door when he was stabbed.

"When a defense of justification is raised, 'the People must prove beyond a reasonable doubt that [the] defendant's conduct was not justified' " (*People v Umali*, 10 NY3d 417, 425 [2008], *rearg denied* 11 NY3d 744 [2008], *cert denied* 556 US 1110 [2009]; *see* Penal Law §§ 25.00 [1]; 35.00). In this case, the People were required to prove either that defendant lacked a subjective belief that her use of deadly physical force was necessary to protect herself against decedent's use or imminent use of deadly physical force, or that "a reasonable person in the same situation would not have perceived that deadly force was necessary" (*Umali*, 10 NY3d at 425; *see* Penal Law § 35.15 [1], [2] [a]; *People v Walker*, 26 NY3d 170, 175 [2015]). Although the jury found that the People met that burden, we conclude, upon our independent assessment of the proof (*see People v Delamota*, 18 NY3d 107, 116-117 [2011]; *People v Danielson*, 9 NY3d 342, 348-349 [2007]), that the jury "failed to give the evidence the weight it should be accorded" (*People v Bleakley*, 69 NY2d 490, 495 [1987]). Defendant's statements at the scene and in her police interview evinced a belief that deadly force was necessary to protect her from decedent, and we conclude that the People did not demonstrate beyond a reasonable doubt that her belief was objectively unreasonable. Instead, the credible evidence established that decedent was in a drunken rage during a heated argument with defendant, that he had threatened "trouble" if the police came, that he had repeatedly forced open doors in the course of pursuing defendant through the apartment, that he was not deterred even when she armed herself with a knife, that he had cornered her in the bathroom and pulled her hair, and that he had grabbed her by the hair to prevent her from leaving the bathroom just before she stabbed him. Under those circumstances, we conclude that the People

failed to meet their burden of establishing that defendant lacked a reasonable belief that decedent was about to use deadly physical force against her, even though decedent was not armed (*see Morgan*, 99 AD3d at 622-623; *People v Svitzer*, 51 AD2d 935, 935 [1976]; *see also Matter of Y.K.*, 87 NY2d 430, 434 [1996]). In other words, this is not a case in which the force employed by defendant " 'exceeded that which was necessary to defend [herself]' " (*People v Tubbs*, 134 AD3d 1464, 1465 [2015], *lv denied* 27 NY3d 1156 [2016]).

In light of our determination, there is no need to address defendant's remaining contentions in her main and pro se supplemental briefs.

All concur except DeJoseph and Scudder, JJ., who dissent and vote to affirm in the following memorandum.

DeJoseph and Scudder, JJ. (dissenting). We respectfully dissent because we disagree with the majority's conclusion that the verdict is contrary to the weight of the evidence. The crucial area of our disagreement is on the issue whether defendant reasonably believed that she was confronted by the use or imminent use of deadly physical force. It is well settled that "[a] defendant is justified in using deadly physical force when he or she reasonably believes, as pertinent here, 'that such force is necessary . . . to protect against the use or imminent use of deadly physical force' " (*People v Every*, 146 AD3d 1157, 1161 [2017]). "[I]t was [undoubtedly] the People's burden to disprove [the justification defense] by demonstrat[ing] beyond a reasonable doubt that defendant did not believe deadly force was necessary or that a reasonable person in the same situation would not have perceived that deadly force was necessary" (*id.* [internal quotation marks omitted]). Here, as in *Every*, it is undisputed that "the victim was unarmed and that defendant was the first to escalate the confrontation by using a deadly weapon," i.e., a knife (*id.* at 1162). "The use of a 'knife to inflict injury upon one's victim constitutes the use of deadly physical force' " (*People v Haynes*, 133 AD3d 1238, 1239 [2015], *lv denied* 27 NY3d 998 [2016]). Thus, in our view, the jury could have reasonably concluded that " 'the predicate for the use of deadly force[, that is,] the reasonable belief that one is under deadly attack[, was] lacking' " (*Every*, 146 AD3d at 1162; *see People v Goley*, 113 AD3d 1083, 1083-1084 [2014]). While the trial record supports the majority's observations that the victim was pulling defendant's hair, forcing himself into the bathroom and/or bedroom, and preventing her from leaving, we conclude that those actions do not amount to deadly physical force to justify defendant's actions (*see Goley*, 113 AD3d at 1083-1084).

Simply stated, in our view, defendant resorted to more force than was necessary (*see People v Madore*, 145 AD3d 1440, 1441 [2016], *lv denied* 29 NY3d 1034 [2017]; *People v Jones*, 151 AD2d 997, 997 [1989], *lv denied* 74 NY2d 812 [1989]). In view of the foregoing, we conclude that "the evidence at trial established that the victim[ ] [was] not using or attempting to use deadly physical force against defendant at the time" of the altercation (*Haynes*, 133 AD3d at 1239), and the People therefore effectively "disproved the justification defense beyond a reasonable doubt" (*People v Johnson*, 103 AD3d 1226, 1227 [2013], *lv denied* 21 NY3d 944 [2013]). Inasmuch as we conclude that the remaining contentions raised in defendant's main and pro se supplemental briefs do not require reversal or modification of the judgment, we would affirm. Present— Whalen, P.J., Smith, DeJoseph, Troutman and Scudder, JJ.