People v Allen (2020 NY Slip Op 02595)





People v Allen


2020 NY Slip Op 02595


Decided on May 1, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 1, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, CURRAN, WINSLOW, AND BANNISTER, JJ.


1223 KA 19-01199

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DANIELLE ALLEN, DEFENDANT-APPELLANT.






MEYERS BUTH LAW GROUP PLLC, ORCHARD PARK (CHERYL MEYERS BUTH OF COUNSEL), FOR DEFENDANT-APPELLANT. 
GREGORY J. MCCAFFREY, DISTRICT ATTORNEY, GENESEO (JOSHUA J. TONRA OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Livingston County Court (Robert B. Wiggins, J.), rendered October 16, 2018. The judgment convicted defendant, upon a jury verdict, of manslaughter in the second degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting her, upon a jury verdict, of manslaughter in the second degree (Penal Law
§ 125.15 [1]), arising out of an incident in which she stabbed her boyfriend with a kitchen knife, causing his death. Defendant contends that County Court erred in admitting evidence seized from her home, including the knife she used to stab the victim, under the plain view doctrine because, she contends, the emergency ended when she was removed from the scene and the victim was determined to be deceased. We reject that contention. Defendant does not dispute that an emergency existed when police officers initially entered the home in response to her 911 call, and we see no basis to disturb the court's determination that the evidence at issue was in plain view when the officers lawfully entered the home to render assistance. In addition, we conclude that the subsequent seizure of the evidence observed in plain view "did not exceed the scope and duration of the emergency" (People v Desmarat, 38 AD3d 913, 915 [2d Dept 2007], lv denied 9 NY3d 842 [2007]; see People v Daniels, 97 AD3d 845, 849 [3d Dept 2012], lv denied 20 NY3d 931 [2012]).
We also reject defendant's contention that the court erred in refusing to suppress statements she made to the police at the hospital. Defendant was transported to the hospital by ambulance to receive medical treatment for an injury to her hand. While at the hospital, defendant cooperated with the investigators and answered questions asked of her. It is well settled that questioning in a hospital setting alone is not determinative of whether the questioning is custodial in nature (see generally People v Drouin, 115 AD3d 1153, 1155-1156 [4th Dept 2014], lv denied 23 NY3d 1019 [2014]; People v Bowen, 229 AD2d 954, 955 [4th Dept 1996], lv denied 88 NY2d 1019 [1996]). The test is "what a reasonable [person], innocent of any crime, would have thought had he [or she] been in the defendant's position" (People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]). Furthermore, in determining whether a defendant was in custody for Miranda purposes, the court should consider: (1) the amount of time the defendant spent with the police; (2) whether the defendant's freedom of action was restricted in any significant manner; (3) the location and atmosphere in which the defendant was questioned; (4) the degree of cooperation exhibited by the defendant; (5) whether the defendant was apprised of his or her constitutional rights; and (6) whether the questioning was investigatory or accusatory in nature (see People v Kelley, 91 AD3d 1318, 1318 [4th Dept 2012], lv denied 19 NY3d 963 [2012]).
Here, defendant was at the hospital for approximately eight hours. During that time, she [*2]was examined by medical personnel, her wound was cleaned and wrapped, and she received a CAT scan and stitches. Medical staff circulated in and out of defendant's room regularly, and although the police were present most of the time, their questioning of defendant was not continuous. Defendant was not handcuffed, and her movement was not restricted in any way. She was free to use the restroom as desired, there was no force or threat of force, and the questions asked of defendant by the police were investigatory in nature. Defendant remained fully cooperative and never refused to answer any questions. Indeed, defendant invited the questioning by stating, "I feel free to answer any questions, honestly." We thus conclude that, contrary to defendant's contention, she was not in custody for Miranda purposes when she spoke to the police at the hospital (see Drouin, 115 AD3d at 1155-1156; see generally People v Forbes, 182 AD2d 829, 829-830 [2d Dept 1992], lv denied 80 NY2d 895 [1992]).
Defendant further contends that the court abused its discretion by allowing uniformed police officers to be present in the courtroom during summations, thereby depriving her of a fair trial. We reject that contention. A trial judge has the general "obligation to preserve order and decorum in the courtroom" (People v Nelson, 27 NY3d 361, 370 [2016], cert denied — US &mdash, 137 S Ct 175 [2016]), and the nature of our review is to determine "whether an unacceptable risk is presented of impermissible factors coming into play" (Carey v Musladin, 549 US 70, 75 [2006] [internal quotation marks omitted]; see Estelle v Williams, 425 US 501, 505 [1976]; Nelson, 27 NY3d at 368). Inasmuch as the record is devoid of any facts establishing where the uniformed officers were located or how many of them were seated together, there is no basis for us to conclude that their presence in the courtroom presented such a risk (see People v Grant, 160 AD3d 1406, 1407 [4th Dept 2018], lv denied 31 NY3d 1148 [2018]; cf. People v Nguyen, 156 AD3d 1461, 1462 [4th Dept 2017], lv denied 31 NY3d 1016 [2018]; see generally Carey, 549 US at 75).
Contrary to defendant's additional contention, viewing the evidence in the light most favorable to the People (see People v Gordon, 23 NY3d 643, 649 [2014]), we conclude that the evidence is legally sufficient to disprove defendant's justification defense, and to establish that defendant recklessly caused the victim's death (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Furthermore, viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). The jury was entitled to credit the testimony of the People's witnesses and to consider the many inconsistencies between defendant's grand jury testimony, which was admitted in evidence at trial, and her statements to, inter alia, the 911 operator, emergency responders, and the police, and we perceive no reason to disturb the jury's credibility determinations in that regard (see People v Tetro, 175 AD3d 1784, 1788 [4th Dept 2019]). The jury was also entitled to conclude that the physical evidence failed to support defendant's versions of the events preceding the fatal stabbing, and we are satisfied that the jury's rejection of the justification defense was not contrary to the weight of the evidence (see generally People v Goley, 113 AD3d 1083, 1084 [4th Dept 2014]).
All concur except Bannister, J., who dissents and votes to reverse in accordance with the following memorandum: I respectfully dissent. The burden upon the People was to prove defendant's guilt beyond a reasonable doubt (see CPL 70.20), and to disprove defendant's justification defense by the same degree (see Penal Law § 25.00 [1]; People v McManus, 67 NY2d 541, 546-547 [1986]). In my view, the People failed to meet their burden of disproving the justification defense beyond a reasonable doubt, and I would therefore reverse the judgment, dismiss the indictment, and remit the matter to County Court for proceedings pursuant to CPL 470.45.
The evidence presented by the People at trial established that, on the night of the incident, defendant called 911 and began by telling the operator, "[He t]ried to kill me." When police officers arrived at her apartment, they found defendant with a large amount of blood on her body and found her boyfriend (decedent) slumped over in front of a couch in the living room. He had died from a single stab wound to the chest. Defendant, who had bruising and scratches on her neck and face and was bleeding from her hand, was taken by ambulance to the hospital. En route to the hospital, she told a paramedic that decedent tried three times to kill her. Apparently not knowing that he was dead, defendant said that she was still afraid that he might kill her. When police officers asked her what happened, defendant, who was intoxicated at the time, initially stated that she did not remember but, later, she stated that she and decedent had been drinking [*3]and that he had tried to kill her. Specifically, she said, decedent had tried choking her. According to defendant's grand jury testimony, which was read into evidence, she and decedent were drinking heavily at her home and began arguing. At some point, decedent threw her up against the kitchen wall and hit her with his right fist across her left eye. Defendant "broke free" and ran away from him, while grabbing a kitchen knife because she "just wanted him to stay away from [her]." Decedent ran after defendant, grabbed her, and threw her onto the couch in the living room. Defendant testified that she was yelling, "Please, don't kill me. Why are you doing this? Please don't kill me." Decedent pinned defendant's arms down with his knees, and he grabbed defendant's throat. Defendant started not being able to breathe. After rocking back and forth, her arm released and she stabbed decedent once. The photographs admitted in evidence revealed that defendant had a black eye and bruising on her throat after the incident.
In order to meet their burden of proof with respect to the defense of justification, the People were required to establish beyond a reasonable doubt that "defendant lacked a subjective belief that her use of deadly physical force was necessary to protect herself against decedent's use or imminent use of deadly physical force, or that a reasonable person in the same situation would not have perceived that deadly force was necessary' " (People v Marchant, 152 AD3d 1243, 1245 [4th Dept 2017]). Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), I conclude that the People failed to present legally sufficient evidence to disprove the justification defense beyond a reasonable doubt (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
First, while defendant made some inconsistent statements after the incident, those statements were made while defendant was highly intoxicated on alcohol and/or drugs. Moreover, defendant's statements were consistent with respect to her subjective belief that decedent was harming her to the point that she needed to defend herself by stabbing him. Indeed, as noted above, defendant told the 911 operator that decedent tried "to kill [her]"; while en route to the hospital, she told a paramedic that decedent tried multiple times to kill her; and at the hospital, while apparently not knowing that decedent was dead, she said that she was still afraid he might kill her. In addition, she told the police at the hospital that decedent choked her to the point that she could not breathe. None of defendant's inconsistent statements was legally sufficient to raise a reasonable doubt with respect to her consistent statements establishing her subjective belief that decedent was using deadly force against her, i.e., choking her to the point where she could not breathe, and that she needed to protect herself. Indeed, defendant's statements concerning her belief that decedent was trying to kill her were consistent from the time of her 911 call to the time she was talking with the police investigators at the hospital.
With respect to whether a reasonable person in defendant's situation would have perceived that deadly force was necessary, the evidence established that defendant had a black eye indicating an assault, bruises and scratches on her neck from decedent's attempts to choke her, and severe lacerations on her left hand from fumbling with the knife. Additionally, a neighbor testified that he heard "a thumping going on," and that he thought he also heard someone say, "Don't kill me." Defendant's home was also in obvious disarray, and there was blood throughout the house. In my view, that evidence was also consistent with defendant's claim of self-defense.
While the People did present some evidence tending to disprove the justification defense, I conclude that, even considering the evidence in the light most favorable to the People, the evidence did not establish beyond a reasonable doubt either that defendant lacked a subjective belief that her use of deadly physical force was necessary, or that a reasonable person in defendant's situation would not have believed that deadly force was necessary (see generally Bleakley, 69 NY2d at 495).
Furthermore, even assuming, arguendo, that the evidence is legally sufficient to support the conviction, I further conclude, upon independently assessing the proof (see People v Delamota, 18 NY3d 107, 116-117 [2011]; People v Danielson, 9 NY3d 342, 348-349 [2007]), that the verdict is against the weight of the evidence insofar as the jury rejected defendant's justification defense (see Marchant, 152 AD3d at 1244-1246; see generally Bleakley, 69 NY2d at 495). To be sure, defendant offered no cogent explanation for decedent's defensive wounds, but it was not defendant's burden to do so. In any event, those defensive wounds, sustained during an undeniable struggle between decedent and defendant, do not establish beyond a [*4]reasonable doubt that decedent was not an aggressor or that defendant was not in fear for her own life, particularly given the presence of scratches on her face and neck, several lacerations on her own hand, and her testimony that the two wrestled over the knife. Moreover, the People's expert was unable to give a definitive opinion regarding the positions that defendant and decedent were in at the time of the stabbing.
In view of my conclusion, it is not necessary to address defendant's remaining contentions. Nevertheless, I note my agreement with defendant that reversal of the judgment and remittal for a new trial would be required on two independent grounds. First, I agree with defendant that her statements made at the hospital to the police should have been suppressed as the product of custodial interrogation conducted without Miranda warnings. The recordings of the police interviews with defendant reveal that there was no time when defendant was unaccompanied by either one of the investigators or another officer. The recordings also establish that the questioning turned from investigatory to accusatory. In my view, under the circumstances presented in this case, a reasonable person, innocent of any crime, would not have believed that he or she was free to leave at the time of questioning (see generally People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]).
Second, I agree with defendant that the court erred in permitting several members of the Livingston County Sheriff's Office—approximately "a dozen members," according to defense counsel, most of them in uniform—to sit in the courtroom during summations. The court erred when it did not intervene in any way despite defense counsel's request that those officers be asked to leave (see generally People v Nelson, 27 NY3d 361, 370 [2016], cert denied — US &mdash, 137 S Ct
175 [2016]).
Entered: May 1, 2020
Mark W. Bennett
Clerk of the Court