People v Cerroni (2024 NY Slip Op 01379)

People v Cerroni

2024 NY Slip Op 01379

Decided on March 15, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 15, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, OGDEN, NOWAK, AND DELCONTE, JJ.

5 KA 22-01659

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SHERYL J. CERRONI, DEFENDANT-APPELLANT. 

LEANNE LAPP, PUBLIC DEFENDER, CANANDAIGUA (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT. 
JAMES B. RITTS, DISTRICT ATTORNEY, CANANDAIGUA (KAYLAN C. PORTER OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Ontario County Court (Frederick G. Reed, A.J.), rendered September 8, 2022. The judgment convicted defendant upon a jury verdict of intimidating a victim or witness in the third degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting her upon a jury verdict of intimidating a victim or witness in the third degree (Penal Law § 215.15 [1]). The conviction arises from an incident in which defendant repeatedly drove by the residence of a certain individual (victim), yelling threats and racial epithets toward him, just days before the victim was scheduled to provide grand jury testimony against one of defendant's sons in an attempted murder investigation.
Defendant first contends that County Court erred in permitting the People to introduce evidence that she was affiliated with members of a street gang. We reject that contention. It is well settled that "[e]vidence of a defendant's prior bad acts may be admissible when it is relevant to a material issue in the case other than defendant's criminal propensity" (People v Dorm, 12 NY3d 16, 19 [2009]). Thus, "[e]vidence regarding gang activity can be admitted to provide necessary background, or when it is 'inextricably interwoven' with the charged crime[ ], or to explain the relationships of the individuals involved" (People v Kims, 24 NY3d 422, 438 [2014]; see People v Tatum, 204 AD3d 1400, 1402 [4th Dept 2022], lv denied 38 NY3d 1074 [2022]). We conclude that the testimony regarding defendant's affiliation with gang members here provided necessary background information to explain the relationship of defendant, her son who was the subject of the attempted murder investigation, and the victim, and to explain why defendant's conduct was intimidating (see People v Savery, 209 AD3d 1268, 1269 [4th Dept 2022], lv denied 39 NY3d 1075 [2023]), and we further conclude that the prejudicial effect of that testimony did not outweigh its probative value (see People v Haygood, 201 AD3d 1363, 1364 [4th Dept 2022], lv denied 38 NY3d 951 [2022]).
Defendant next contends that the court improperly abused its discretion, following a Hinton hearing (see generally People v Hinton, 31 NY2d 71, 75-76 [1972], cert denied 410 US 911 [1973]), by excluding from the courtroom a different son of hers and two of his associates during a portion of the victim's testimony. We reject that contention. "[A] trial court's discretion to exclude the public from criminal proceedings must be exercised only when unusual circumstances necessitate it" (People v Reid, 40 NY3d 198, 202 [2023] [internal quotation marks omitted]), such as where, as here, a witness has "expressed fear for his safety if he testifie[s] before defendant's family and friends" (People v Floyd, 45 AD3d 1457, 1458 [4th Dept 2007], lv denied 10 NY3d 811 [2008]). Having "consider[ed] reasonable alternatives . . . and [made] findings adequate to support the [partial] closure," the court properly exercised its discretion in determining that excluding the three individuals in question for the remainder of the victim's testimony "advance[d] an overriding interest that [was] likely to be prejudiced . . . [and was] no [*2]broader than necessary to protect that interest" (id. [internal quotation marks omitted]; see People v Frost, 100 NY2d 129, 137 [2003]; People v Ming Li, 91 NY2d 913, 917 [1998]). Contrary to defendant's argument, the court was not required "to explain, on the record, the alternatives . . . that it considered" inasmuch as it can be inferred under the circumstances here that the court "determined that no lesser alternative would protect the articulated interest" (People v Garay, 25 NY3d 62, 70 [2015], cert denied 577 US 985 [2015] [internal quotation marks omitted]). Contrary to defendant's further argument, the fact that the victim gave some testimony on cross-examination during the hearing in which he disclaimed any fear of testifying in open court does not require reversal. The victim's testimony on direct examination during the hearing reflects that he was fearful of testifying in the presence of the three individuals in question, and the "trial court was in the best position to determine whether the witness'[s] expression of fear rose to a level justifying the [partial] closure" (People v Williams, 132 AD3d 439, 440 [1st Dept 2015], lv denied 26 NY3d 1093 [2015]; see People v Squire, 115 AD3d 454, 455 [1st Dept 2014], lv denied 23 NY3d 1043 [2014]).
Defendant additionally contends that she was deprived of a fair trial by the presence of uniformed officers in the courtroom gallery toward the end of one of the days of trial. We reject that contention. A criminal defendant " 'is entitled to have [their] guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial' " (Holbrook v Flynn, 475 US 560, 567 [1986]; see People v Nelson, 27 NY3d 361, 367 [2016], cert denied 580 US 880 [2016]). Thus, a trial court has an "affirmative obligation to control conduct and decorum in the courtroom, in order to promote the fair administration of justice for all" (Nelson, 27 NY3d at 367), including where uniformed officers are present in the courtroom gallery (see People v Allen, 183 AD3d 1284, 1285-1286 [4th Dept 2020], affd 36 NY3d 1033 [2021]). Inasmuch as the record here is "devoid of any facts establishing where the uniformed officers were located or how many of them were [present], there is no basis for us to conclude that their presence in the courtroom presented" an unacceptable risk "of impermissible factors coming into play" (id. at 1286 [internal quotation marks omitted]; see People v Acosta, 208 AD3d 1579, 1581 [4th Dept 2022], lv denied 39 NY3d 1076 [2023]).
Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we reject defendant's contention that the evidence is legally insufficient to support her conviction (see People v Gamble, 74 NY2d 904, 905-906 [1989]; People v Henderson, 265 AD2d 573, 573 [2d Dept 1999], lv denied 94 NY2d 880 [2000]). In addition, viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that, although a different verdict would not have been unreasonable, the jury did not fail to give the evidence the weight it should be accorded (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). There was nothing about the victim's testimony that rendered it "manifestly untrue, physically impossible, contrary to experience, or self-contradictory" (Savery, 209 AD3d at 1270 [internal quotation marks omitted]), and the conflicting testimony of the victim and defendant's witness merely "raised issues of credibility for the jury to resolve" (People v Watts, 218 AD3d 1171, 1173-1174 [4th Dept 2023], lv denied 40 NY3d 1013 [2023] [internal quotation marks omitted]).
Defendant further contends that she was denied a fair trial due to prosecutorial misconduct based on statements made by the prosecutor outside the presence of the jury relating to defendant's guilt, and based on purportedly racially charged comments made by the prosecutor during summation. With respect to the statements made by the prosecutor outside the presence of the jury, while we agree with defendant that "a prosecutor's mission is not so much to convict as it is to achieve a just result," we conclude that "there is no indication [here] that the prosecutor's allegedly improper motives affected this case" (People v Hunt, 39 AD3d 961, 964 [3d Dept 2007], lv denied 9 NY3d 845 [2007] [internal quotation marks omitted]). With respect to the prosecutor's comments during summation, the contention is not preserved for our review inasmuch as defendant did not object to those comments (see CPL 470.05 [2]). In any event, we conclude that the comments did not interject improper racial considerations but, rather, were merely "fair comment on the evidence and fair response to defense counsel's summation" (People v Wagoner, 195 AD3d 1595, 1600 [4th Dept 2021], lv denied 37 NY3d 1030 [2021], reconsideration denied 37 NY3d 1100 [2021], cert denied — US &mdash, 142 S Ct 867 [2022]; see People v Lewis, 46 AD3d 943, 946 [3d Dept 2007]).
Finally, we reject defendant's contention that the sentence is unduly harsh and severe.
Entered: March 15, 2024
Ann Dillon Flynn
Clerk of the Court