People v Casiano (2025 NY Slip Op 04316)

People v Casiano

2025 NY Slip Op 04316

Decided on July 25, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, OGDEN, DELCONTE, AND KEANE, JJ.

380 KA 22-01562

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
RICARDO CASIANO, DEFENDANT-APPELLANT. 

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (CLEA WEISS OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (RYAN P. ASHE OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Thomas E. Moran, J.), rendered February 25, 2022. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is modified as a matter of discretion in the interest of justice by reducing the sentence of imprisonment imposed on each count to a determinate term of four years, and as modified the judgment is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b]; [3]). The conviction arises from an incident in which police officers responded to shots fired in the area of defendant's house. The trial evidence established that, upon their arrival at approximately 10:30 p.m. on the night in question, the officers heard additional shots fired and observed defendant standing on the roof of his garage, and at least one officer observed a muzzle flash indicative of gunfire. The garage was detached from the house, and located within a fenced-in yard. Defendant was apprehended in his yard, with a leg injury, after either jumping or falling from the garage to the ground below. Upon searching the yard, the police located a loaded magazine and a handgun. Shell casings were found on the roof of the garage and on the back porch of the house. A number of bullet strikes were also found on a vehicle in front of the house and at two locations across the street. In addition, the evidence, including body camera footage and audio recordings that were admitted at trial, established that defendant made certain statements to the police, both while in his backyard and later while he was being treated at a hospital, indicating that he had fired shots in response to an earlier altercation during which, inter alia, his son was stabbed by an assailant.
Defendant contends, with respect to the first count of which he was convicted, that there is legally insufficient evidence that he possessed the gun in question with the intent to use it unlawfully against another (see Penal Law § 265.03 [1]). We reject that contention. Based on the evidence adduced at trial, we conclude that there is a valid line of reasoning and permissible inferences from which a rational jury could have found, beyond a reasonable doubt, that defendant intended to use the gun unlawfully by firing it at the individual who stabbed his son (see People v Horton, 216 AD2d 913, 913 [4th Dept 1995], lv denied 87 NY2d 902 [1995]; see generally People v Estrella, 41 NY3d 514, 517 [2024]).
Defendant further contends, with respect to the second count, that there is legally insufficient evidence that the possession of the firearm took place "outside of [his] home" (Penal Law § 265.03 [3]). We reject that contention. Although "article 265 of the Penal Law contains no definition of 'home,' " an important consideration in determining whether possession occurred outside of one's "home" is "whether the possessor of the weapon was entitled to 'privacy, as one would have in [their] home' in the area where [they possessed] the weapon" [*2](People v Powell, 54 NY2d 524, 526-527, 530 [1981]). Here, the evidence reflects that defendant left the privacy of his fenced-in yard and climbed to the roof of his garage, where he was readily observable by anyone passing by, including the police who observed him firing his weapon. Under these circumstances, we conclude that there is a valid line of reasoning and permissible inferences from which a rational jury could have found beyond a reasonable doubt that defendant possessed the gun outside of his home (see § 265.03 [3]; see generally Estrella, 41 NY3d at 517).
Furthermore, viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Even assuming, arguendo, that a different verdict would not have been unreasonable, we cannot conclude "that the jury failed to give the evidence the weight it should be accorded" (People v Maull, 167 AD3d 1465, 1467 [4th Dept 2018], lv denied 33 NY3d 951 [2019] [internal quotation marks omitted]; see generally Bleakley, 69 NY2d at 495).
We reject defendant's contention that Supreme Court erred in refusing to suppress statements that he made to police officers in the absence of Miranda warnings. It is well settled that Miranda warnings must be given when a defendant is subject to custodial interrogation (see People v Paulman, 5 NY3d 122, 129 [2005]; People v Berg, 92 NY2d 701, 704 [1999]; People v Torres, 172 AD3d 758, 760 [2d Dept 2019]). "In determining whether suppression is required, the court 'should consider: (1) the amount of time the defendant spent with the police, (2) whether [defendant's] freedom of action was restricted in any significant manner, (3) the location and atmosphere in which the defendant was questioned, (4) the degree of cooperation exhibited by the defendant, (5) whether [the defendant] was apprised of [their] constitutional rights, and (6) whether the questioning was investigatory or accusatory in nature' " (People v Lunderman, 19 AD3d 1067, 1068-1069 [4th Dept 2005], lv denied 5 NY3d 830 [2005]). Although no Miranda warnings were given to defendant while in his backyard or at the hospital, we conclude upon our review of the relevant factors that, under the circumstances here, the questioning by the police officers in each instance "constituted a noncustodial investigatory inquiry for which Miranda warnings were not required" (People v Baker, 188 AD2d 1012, 1012 [4th Dept 1992], lv denied 81 NY2d 967 [1993]; see People v Bennett, 70 NY2d 891, 893-894 [1987]).
We agree with defendant that his sentence is unduly harsh and severe under the circumstances of this case. Thus, as a matter of discretion in the interest of justice, we modify the judgment by reducing the sentence of imprisonment imposed on each count to a determinate term of four years (see CPL 470.15 [6] [b]), to be followed by the five years of postrelease supervision imposed by the court, with the sentences remaining concurrent.
We have reviewed defendant's remaining contentions and conclude that none warrants reversal or further modification of the judgment.
All concur except Ogden, J., who dissents and votes to reverse in accordance with the following memorandum: I respectfully dissent inasmuch as I conclude that Supreme Court erred in refusing to suppress statements made by defendant in his backyard and subsequently at a local hospital absent Miranda warnings.
Initially, I agree with the majority that, based on the evidence admitted at trial, defendant's conviction is supported by legally sufficient evidence, and the verdict is not against the weight of the evidence (see generally People v Estrella, 41 NY3d 514, 517-518 [2024]; People v Danielson, 9 NY3d 342, 348-349 [2007]). I disagree with the majority, however, that the questioning by the police in defendant's backyard constituted a noncustodial investigatory inquiry for which Miranda warnings were not required. In my view, defendant was in custody at that time and was subjected to an interrogation.
"The Miranda rule protects the privilege against self-incrimination" (People v Paulman, 5 NY3d 122, 129 [2005]). "Miranda warnings must be administered when an interrogation occurs 'after a person has been taken into custody or otherwise deprived of [their] freedom of action in any significant way' " (People v Cabrera, 41 NY3d 35, 52 [2023], quoting Miranda v Arizona, 384 US 436, 444 [1966]). "To ascertain custodial status, [courts] must consider 'whether a reasonable person innocent of any wrongdoing would have believed that [they were] [*3]not free to leave' . . . and whether there has been a 'forcible seizure which curtails a person's freedom of action to the degree associated with a formal arrest' " (id.). "[I]n determining whether a defendant was in custody for Miranda purposes, the court should consider: (1) the amount of time the defendant spent with the police; (2) whether the defendant's freedom of action was restricted in any significant manner; (3) the location and atmosphere in which the defendant was questioned; (4) the degree of cooperation exhibited by the defendant; (5) whether the defendant was apprised of [their] constitutional rights; and (6) whether the questioning was investigatory or accusatory in nature" (People v Allen, 183 AD3d 1284, 1285 [4th Dept 2020], affd 36 NY3d 1033 [2021]; see People v Hughes, 199 AD3d 1332, 1334 [4th Dept 2021]).
As the body camera footage admitted in evidence at the suppression hearing reflects, defendant was approached in his backyard at approximately 10:30 p.m. by a number of police officers. One such officer (initial approaching officer), who testified at the suppression hearing, yelled, "Hey, don't move!" and "Police, don't fucking move!," to which defendant replied, multiple times, "I'm not moving, my leg is broken." The initial approaching officer accused defendant of possessing a weapon and asked him, several times, "What did you throw back here?" In addition, an officer can be heard on the body camera footage saying that it would be "best for you to be honest with me" because the police "were going to find it," i.e., the gun. Later, in front of defendant, the initial approaching officer told an officer who was with defendant, "We know we're eventually gonna have to cuff him, right?," to which that officer replied, "Yeah." Defendant then asked if they could wait to handcuff him until he was inside a van. Seconds after the exchange concerning whether defendant needed to be handcuffed occurred, defendant told the officers, "I was just protecting my family. He literally stabbed my son, what would of you had [sic] done?"
In my view, each and every factor in determining whether defendant was in custody for Miranda purposes weighs in defendant's favor. First, defendant was with the police in his backyard for almost an hour (see People v Hernandez, 174 AD3d 1352, 1353-1354 [4th Dept 2019]; cf. People v Weakfall, 108 AD3d 1115, 1115-1116 [4th Dept 2013], lv denied 21 NY3d 1078 [2013]). Second, defendant's freedom of action, notwithstanding his leg injury, was restricted in a significant manner from the inception of the encounter. The encounter started with police officers yelling at defendant not to move, to get on the ground, and to let the officers see his hands at all times (see generally United States v Guarino, 629 F Supp 320, 325 [D Conn 1986]). Moreover, defendant was informed multiple times that nothing would happen until the officers found the gun (see generally People v Doll, 98 AD3d 356, 362 [4th Dept 2012], affd 21 NY3d 665 [2013], rearg denied 22 NY3d 1053 [2014], cert denied 572 US 1022 [2014]). Next, the atmosphere in which defendant was questioned was highly intrusive because his backyard was full of officers searching for a gun (cf. United States v Luna-Encinas, 603 F3d 876, 881-882 [11th Cir 2010]; see generally People v Rabideau, 82 AD3d 1283, 1284 [3d Dept 2011], lv denied 17 NY3d 799 [2011]). It is apparent from the body camera footage that defendant did not cooperate with the officers because he never told them where the gun was, despite repeated accusatory questioning on the topic (cf. Allen, 183 AD3d at 1285). Despite the above, defendant was not advised of his Miranda warnings, and the officers' questions to defendant were not merely investigatory in nature (see People v Anthony, 85 AD3d 1634, 1635 [4th Dept 2011], lv denied 17 NY3d 813 [2011]; People v Brown, 49 AD3d 1345, 1346 [4th Dept 2008]; see also People v Booker, 66 AD2d 474, 478-479 [4th Dept 1979], affd 49 NY2d 989 [1980]).
Such accusatory questions constituted an interrogation because they were " 'reasonably likely to elicit an incriminating response' " (Paulman, 5 NY3d at 129, quoting People v Ferro, 63 NY2d 316, 322 [1984], cert denied 472 US 1007 [1985]; see Rhode Island v Innis, 446 US 291, 300-301 [1980]). I therefore conclude that the statements defendant made in the backyard should have been suppressed.
Defendant also contends that the statements that he made at the hospital should have been suppressed because the "cat [was] out of the bag" (United States v Bayer, 331 US 532, 540 [1947], reh denied 332 US 785 [1947]). "[T]he 'letting the cat out of the bag' theory . . . 'treats successive confessions as equally inadmissible, where the first is infected by the absence of Miranda warnings and the others follow in short order, even though accompanied by warnings' " (People v Johnson, 121 AD2d 84, 87-88 [4th Dept 1986], quoting People v Parker, 82 AD2d 661, 668 [2d Dept 1981], affd 57 NY2d 815 [1982]; see People v Tanner, 30 NY2d 102, 106 [1972]). The notable difference here is that no Miranda warnings were ever given at the [*4]hospital. That, however, does not change the logic behind the theory. I conclude that defendant's statements at the hospital were tainted by his earlier statements in the backyard (cf. People v Thurman, 262 AD2d 987, 988 [4th Dept 1999], lv denied 94 NY2d 830 [1999]), particularly because defendant made very similar incriminating statements at the hospital upon continued accusatory questioning. In my view, defendant's successive incriminating statements are equally inadmissible inasmuch as the initial statements in the backyard were infected by the ongoing absence of Miranda warnings.
I further conclude that the error in refusing to suppress defendant's statements to the police cannot be deemed harmless. At trial, the People relied upon those statements, which were admitted in evidence, when opposing defendant's motion for a trial order of dismissal, and the People later pointed to those statements in their closing argument to the jury. Even assuming, arguendo, that the proof was overwhelming as to defendant's guilt, I conclude that there is a reasonable possibility the error contributed to defendant's conviction (see People v Crimmins, 36 NY2d 230, 237 [1975]). I would therefore reverse the judgment, grant that part of defendant's omnibus motion seeking to suppress his statements to the police, and grant a new trial. In light of my determination, it is not necessary to review defendant's remaining contentions.
Entered: July 25, 2025
Ann Dillon Flynn
Clerk of the Court